HOUSING AUTHORITY OF THE CITY OF CAMDEN, A BODY POLITIC OF THE STATE OF NEW JERSEY, PLAINTIFF-APPELLANT, v. UNITED AJAX CORPORATION, A CORPORATION OF NEW JERSEY, STATE OF NEW JERSEY AND CITY OF CAMDEN, DEFENDANTS-RESPONDENTS.

Superior Court of New Jersey
Appellate Division

Submitted June 18, 1974—Decided June 28, 1974.

Before Judges HALPERN, MATTHEWS and BISCHOFF.

*Mr. Martin F. McKernan,* attorney for appellant.

*Messrs. Brown, Connery, Kulp, Wille, Purnell & Greene,* attorneys for respondents (*Mr. Steven G. Wolschina,* on the brief).

The opinion of the court was delivered by
MATTHEWS, J. A. D. This is a condemnation action in which plaintiff Housing Authority of the City of Camden (Authority) appeals from a judgment assessing compensation. The premises of defendant United Ajax Corporation (Ajax) are within an urban renewal area of Camden which was the subject of a declaration of blight on May 18, 1966. The Authority filed its complaint in condemnation on January 24, 1972. On July 10, 1972 Ajax appealed from the Condemnation commissioners' June 20, 1972 award of

$30,000. A trial to determine compensation was held before a Law Division judge, sitting without a jury, on June 4, 1973. He awarded Ajax $54,000.

The Authority does not challenge the amount of compensation awarded by the trial judge. It does challenge his determination that no allowance would be made for insurance proceeds received by Ajax for fire damage. The sole issue before us is whether the Authority is entitled to an abatement against the total award of $54,000 equivalent to insurance proceeds paid to Ajax for fire damage which occurred after the declaration of blight and before the initiation of condemnation proceedings.

The Ajax property is a three-story concrete and brick structure, housing a pharmacy, office space and an apartment. On October 3, 1967, approximately 1½ years after the structure and area were declared blighted, a fire damaged the second and third floors. The damage was variously described as severe and decorative rather than structural; it would appear that it was extensive. It is conceded that plaster was damaged, laths and joists were exposed. No repairs were effected. Ajax subsequently received $25,000 in insurance.

In a condemnation proceeding in which the subject property has been declared to be a part of a blighted area, the controlling date for valuation purposes is that of the declaration of blight. *N. J. S. A.* 40:55–21.10 provides:

* * * that in any eminent domain proceeding instituted by virtue of the power hereinbefore conferred, the value of any property sought to be acquired shall be fixed and determined to be no less than the value as of the date of the declaration of blight * * *.

See also *N. J. S. A.* 20:3–38. The constitutionality of *N. J. S. A.* 40:55–21.10 and *N. J. S. A.* 20:1–9, the predecessor of *N. J. S. A.* 20:3–38, was upheld in *Jersey City Redevelopment Agency v. Kugler,* 58 *N. J.* 374 (1971). There the court stated:

The provision of the Constitution for the payment of just compensation is primarily a restriction on the power of the Legislature

for the benefit of the property owner. As we have said, it is not a specific measuring rule and there is a margin of discretion for courts and the Legislature in devising rules to insure such compensation. And it seems to be well recognized that while the lawmakers cannot adopt a measure which will detract from that compensation, they may prescribe a rule of damages more favorable to the landowner than that which would satisfy the minimum requirement of the Constitution. * * *

* * * We perceive no conflict between the minimum base and the Constitutional guaranty. Under the circumstances, the Appellate Division's view that Chapters 217 and 218, *L.* 1967, *N. J. S. A.* 20:1–9, and *N. J. S. A.* 40:55–21.10 are not violative of the constitutional mandate for payment of just compensation is affirmed. We agree also that the valuation rule prescribed thereby does not constitute an unconstitutional invasion of the authority of the judicial branch of the government to assess just compensation. [at 384–385]

 Once the valuation date is established, whether it is the date of blight declaration or the date of taking, the prevailing rule is that changes in condition of property which occur after that date do not affect the amount of compensation to be paid. *State v. Jones,* 27 *N. J.* 257 (1958) ; *North Hudson County R.R. Co. v. Booraem,* 28 *N. J. Eq.* 450, 455 (E. & A. 1877) ; 3 *Nichols, Eminent Domain,* § 8.5(1) at 28–31. In an explanation of the rule, the court in *State v. Jones* stated:

If, after the taking and before the condemnation action, the property is reduced in value *because of alterations by the Commissioner or otherwise,* the condemnee would justly be entitled to the higher valuation as of the date of taking; * * *. On the other hand if, after the taking and before the condemnation action, the land increases in value *because of alterations by the Commissioner or otherwise,* the condemnee would not justly be entitled to the higher valuation; * * *. [27 *N. J.* at 262; emphasis added]

However, since the ultimate goal is an assessment of fair compensation, we conclude that this broad rule is to be limited to actions by the condemnor, or factors akin to general economic conditions which diminish or enhance the value of the property.

In *Jersey City Redevelopment Agency v. Kugler,* 111 *N. J. Super.* 50 (App. Div. 1970), the agency argued that

the statute abolished the "defense of unjust enrichment" which thus rendered the statute unconstitutional. We rejected the constitutional argument noting:

But we do not read the amendments as in any way changing the existing law as to the legal consequences of mishandling of the property by the owners or other circumstances affecting fair compensation as between the parties, and occurring between the statutory valuation date and the taking of possession by the condemning agency. [at 61]

See also, *N. J. Highway Auth. v. Wood*, 39 *N. J. Super.* 575, 582 (App. Div. 1956), certif. den. 21 *N. J.* 551 (1956).

We have not found any authority in this jurisdiction discussing the issue before us; however, one out-of-state court has ruled that a property owner who has received insurance proceeds for fire damage occurring between the valuation date and taking date is not entitled to full compensation as of the date of valuation. *Jefferson Cty. v. Adwell*, 267 Ala. 544, 103 *So.* 2d 143 (Sup. Ct. 1956).

■ The factual situation may be compared to one that arises when improved real property, which is the subject matter of a contract of sale, is damaged or destroyed before the date of closing. It is the settled rule in this jurisdiction that, absent provision in the contract, the risk of loss or destruction to the property during the executory interval will be borne by the purchaser. *Coolidge & Sickler, Inc. v. Regn*, 7 *N. J.* 93, 98 (1951). In the event of loss by fire, the proceeds of insurance held by the vendor are to be held in trust for the purchaser and credited against the purchase price. *Millville Aerie, F.O. of E. v. Weatherby*, 82 *N. J. Eq.* 455 (Ch. 1913); 5 *Couch on Insurance* 2d, § 29.99. The vendor-purchaser rule serves as a useful analogy because in that situation the bargained for purchase price is presumed to represent the fair market value — a value generally accepted as just compensation. See *State v. Gorga*, 26 *N. J.* 113 (1958). In the vendor-purchaser context, receipt of the full purchase price plus insurance proceeds is considered a

windfall. We believe that the same rationale should apply in this case.

Section 21.10 of the statute (*N. J. S. A.* 40:55–21.10) guarantees the property owner the fair market value, and no more, as of the date of blight. Under the circumstances of this case, payment of the full $54,000 award would allow Ajax a sum in excess of just compensation. Accordingly, the judgment of the Law Division is modified so as to give plaintiff a credit for the $25,000 received by Ajax from insurance.

As so modified the judgment is affirmed.