280 N.J. Super. 624 (1994)
656 A.2d 70
214 CORP., A CORPORATION OF THE STATE OF NEW JERSEY, PLAINTIFF,
v.
CASINO REINVESTMENT DEVELOPMENT AUTHORITY, A PUBLIC CORPORATE BODY OF THE STATE OF NEW JERSEY, DEFENDANT.
Superior Court of New Jersey, Law Division Atlantic County.
Decided September 8, 1994.
*626 Benjamin Zeltner, for plaintiff (Levine Staller Sklar Chan & Brodsky, attorneys).
Paul V. Fernicola, for defendant (Giordano Halleran & Ciesla, attorneys).
RICHARD J. WILLIAMS, A.J.S.C.
This matter comes before the court on motion of defendant, Casino Reinvestment Development Authority (CRDA) for summary judgment, dismissing the complaint of plaintiff, 214 Corp. The complaint alleges that CRDA's pre-condemnation relocation assistance activities interfered with plaintiff's contractual relations with its tenants, resulting in damages for lost rentals on its properties in the sum of $21,466.80 for the period from March through November 1992.
CRDA is a public body created under the 1984 amendments to the Casino Control Act (P.L. 1984, C. 218, N.J.S.A. 5:12-153 to -183) to finance various public interest projects, among which are the construction and rehabilitation of buildings to provide safe and sanitary dwelling units for persons of low, moderate, medium-range and middle income. Pursuant to its authority, CRDA adopted a Redevelopment Plan for the Northeast Inlet area to assist in the redevelopment of Atlantic City. As part of its undertaking to redevelop the Northeast Inlet, it became involved in a massive acquisition of land for the construction of 200 townhouse units in what is now known as the Northeast Inlet Phase II Project.
In January 1992 CRDA initiated negotiations for the acquisition of properties owned by plaintiff within the taking area. Four of plaintiff's lots are developed and leased to residential tenants. (235, 237, 239 and 241 Caspian Avenue) A fifth lot (242 Caspian Avenue) is an undeveloped parcel. On January 31, 1992 and *627 February 12, 1992, CRDA made written offers for the properties. At the same time, CRDA notified the tenants of the four residential properties of its intention to acquire the properties. The tenants were informed that if they had resided on the properties for not less than 90 days, they were eligible for financial assistance and other benefits under the Relocation Assistance Act, N.J.S.A. 20:4-1 to -22. CRDA also enclosed a list of comparable dwellings that were currently available to eligible tenants as replacement housing. CRDA also stated:
CRDA HAS COMMENCED NEGOTIATIONS TO ACQUIRE THE ABOVE PROPERTY. YOU MAY BE REQUIRED TO MOVE WITHIN 90 DAYS AFTER YOU RECEIVE THIS NOTICE. IF YOU REMAIN IN POSSESSION OF THE PROPERTY AFTER THAT TIME, CRDA MAY BE ABLE TO HAVE YOU AND YOUR BELONGINGS REMOVED BY THE SHERIFF.
In the middle of March 1992, Robert Goldstein, an officer of 214 Corp., went to the 235, 237 and 239 Caspian Avenue properties to determine whether any of the tenants were experiencing problems with the properties. He discovered that the tenants had vacated the properties. In the middle of April 1992, Goldstein went to the 241 Caspian Avenue property and discovered that the tenant had also vacated that property. The properties remained vacant thereafter.
CRDA's negotiations with 214 Corp. ultimately failed to produce an amicable transfer of title and a condemnation action was instituted on August 14, 1992. Thereafter, on November 20, 1992, declarations of taking for the properties were filed.
On January 31, 1994, plaintiff initiated this action seeking damages for interference with its contractual relationship with its tenants by reason of CRDA's offer of relocation benefits prior to the filing of the declarations of taking for the respective properties. Specifically, plaintiff alleges in its complaint:
On or about the period of January, 1992 to April, 1992, defendant interfered with plaintiff's contractual relations and prospective economic advantage by wrongfully and improperly inducing and causing the Tenants to vacate the Properties.
CRDA now seeks dismissal of that complaint by way of summary judgment. Summary judgment is appropriate where there *628 is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. Judson v. Peoples Bank & Trust Co. of Westfield, 17 N.J. 67, 73-75, 110 A.2d 24 (1954).
The exact legal theory upon which plaintiff bases its claim is not clear from the complaint. Our courts have distinguished a cause of action for the intentional interference with a prospective contractual or economic advantage from the intentional interference with an existing contract. Harris v. Perl, 41 N.J. 455, 197 A.2d 359 (1964); C.B. Snyder Realty Co. v. National Newark & Essex Banking Co., 14 N.J. 146, 101 A.2d 544 (1953); C.B. Snyder Realty Co. v. BMW of N.Am., Inc., 233 N.J. Super. 65, 558 A.2d 28 (App.Div. 1989); Printing Mart-Morristown v. Sharp Electronics Corp., 116 N.J. 739, 563 A.2d 31 (1989).
To support a claim of intentional interference with a prospective contractual or economic advantage plaintiff must prove: (1) a protectable interest deriving from a reasonable expectation of economic advantage evolving from the plaintiff's pursuit of business; (2) that the interference was inflicted intentionally and without justification; (3) that the interference caused the loss of the prospective gain; and (4) that the interference caused damage. Printing Mart-Morristown, supra, 116 N.J. at 751-52, 563 A.2d 31 (1989).
To support a claim of tortious interference with a contract, plaintiff must prove: (1) actual interference with a contract; (2) that the interference was inflicted intentionally by a defendant who is not a party to the contract; (3) that the interference was without justification; and (4) that the interference caused damage. Norwood Easthill Assoc. v. N.E. Watch., 222 N.J. Super. 378, 536 A.2d 1317 (App.Div. 1988); See also Kopp, Inc. v. United Tech., Inc., 223 N.J. Super. 548, 539 A.2d 309 (App.Div. 1988).
While it is unclear which cause of action plaintiff is asserting, a critical element in both causes of action is the requirement that the defendant's interference not be justified. CRDA's motion for *629 summary judgment asserts that plaintiff cannot establish that essential element because its relocation activities were required in order to comply with obligations imposed upon it by the Relocation Assistance Act, supra. For this reason CRDA asserts that it cannot be liable to plaintiff for lost rentals from tenants who vacated the properties prior to condemnation.
The resolution of this matter requires an understanding of the Eminent Domain Act of 1971, N.J.S.A. 20:3-1 to -50 (L. 1971, c. 361) and the Relocation Assistance Act, supra. (L. 1971, c. 362). Both acts were approved on the same day and must be read in pari materia.
The Eminent Domain Act of 1971 followed a decade of studies and recommendations by groups such as the N.J. Supreme Court Committee on Eminent Domain, the N.J. State Bar Committee on Revision of the Law of Eminent Domain and the New Jersey Eminent Domain Revision Commission which were aimed at reform of the law of condemnation. That Act, adopted in 1971, was ultimately based upon the recommendations contained in the 1965 Report of the Eminent Domain Revision Commission of New Jersey. That report provided, in pertinent part, as follows:

Negotiations for acquisition. To foster amicable adjustments and thereby reduce litigation, the statute shall require that before proceedings are instituted, the condemning body shall conduct bona fide negotiations with the owners through fair offers of compensation, including a reasonable disclosure of the manner of arriving at the offer.
....
Complaints have been made to the Commission that negotiations for acquisition are frequently conducted in an arbitrary manner. The owner is advised merely of the dollar amount of the offer, but is given no information, even if he requests, as to the manner of ascertaining the amount so offered. It is believed that such treatment of a property owner is improper. The Commission is of the opinion that if fair offers are made based upon appropriate data disclosed to the owner, many acquisitions will be completed amicably, without subjecting the authority and the owner to the expense and delay of litigation.
The Commission, therefore, recommends that no proceedings for the taking of property shall be instituted until bona fide negotiations (including a reasonable disclosure of the basis of the offer) have failed.
[Commission Report, pp. 6-7, 16.]
*630 The purpose of this act is to establish uniform legal requirements for all entities and agencies having the power to condemn, (Monmouth County v. Wissell, 68 N.J. 35, 342 A.2d 199 (1975); Housing Auth. v. United Ajax Corp., 129 N.J. Super. 119, 322 A.2d 474 (App.Div. 1974)), and to encourage public entities to acquire property without litigation where possible, thereby saving both the public and the condemnee the expense and delay of court action, and permitting the condemnee to receive and keep the full compensation due. Morris County v. Weiner, 222 N.J. Super. 560, 566, 537 A.2d 752 (App.Div. 1988); Monmouth County v. Whispering Woods, 222 N.J. Super. 1, 8-9, 535 A.2d 968 (App.Div. 1987). Thus, only when the condemning agency cannot acquire the property through bona fide negotiations may a condemnation action be instituted by the filing of a verified complaint. N.J.S.A. 20:3-6.
Possession of the property and acquisition of title are acquired through the filing of a Declaration of Taking. N.J.S.A. 20:3-17 provides, in pertinent part:
At any time contemporaneous with or after the institution of an action through the filing of the Complaint and service of process, the condemning agency may also file in the recording office, a declaration of taking, duly executed by an executive official of the condemnor, in form and content specified by the rules.
After the declaration of taking has been recorded and served on the condemnee and all occupants of the property, the right to the immediate and exclusive possession and title to the property vests in the condemnor.
N.J.S.A. 20:3-19 provides, in pertinent part:
A copy of the declaration of taking and notice of the filing thereof and of the making of the aforesaid deposit, shall be served upon the condemnee and all occupants of the property in accordance with the rules, and proof of such service shall be filed in the action. Thereupon, the right to the immediate and exclusive possession and title to the property described in the declaration of taking shall vest in the condemnor, free and discharged of all right, title, interest and liens of all condemnees without the necessity of further process provided however, that the court may, upon application and good cause shown, stay the taking of possession of the land or other property, or authorize possession to be taken upon prescribed conditions.
The initiation of the condemnation action is distinguished from the physical taking of the property. The "taking" does not occur until the condemnor files and serves the declaration of taking. *631 Township of Wayne v. Ricmin, Inc., 124 N.J. Super. 509, 308 A.2d 27 (App.Div. 1973).
The Relocation Assistance Act also had its origins in the Report of the Eminent Domain Revision Commission of New Jersey. The purpose of that Act, as stated therein, is to establish a uniform policy for fair and equitable treatment of persons or businesses displaced by the acquisition of real property by state and local land acquisition programs. N.J.S.A. 20:4-2.
To achieve this purpose, N.J.S.A. 20:4-4 provides:
a. If a taking agency acquires real property for public use, it shall make fair and reasonable relocation payments to displaced persons and businesses as required by this act, for:
(1) actual reasonable expenses in moving himself, his family, business, farm operation, or other personal property;
(2) actual direct losses of tangible property as a result of moving or discontinuing a business or farm operation, but not to exceed an amount equal to reasonable expenses that would have been required to relocate such property, as determined by the taking agency; and
(3) actual reasonable expenses in searching for a replacement business or farm.
N.J.S.A. 20:4-6 provides further relief:
In addition to amounts otherwise authorized by this act, a taking agency shall make a payment to or for any displaced person displaced from any dwelling not eligible to receive a payment under section [20:4-5] which dwelling was actually and lawfully occupied by such displaced person for not less than 90 days prior to the initiation of negotiations for acquisition of such dwelling ...
To effect the intent of the Legislature, the Commissioner of the Department of Community Affairs was empowered to adopt rules and regulations necessary to implement the Act. N.J.S.A. 20:4-10. Rules and regulations governing relocation assistance have been enacted at N.J.A.C. 5:11-1.1 to -9.3. Two sections of the Code are pertinent here.
N.J.A.C. 5:11-2.2 provides:
(a) Whenever any state agency (except the New Jersey Department of Transportation), unit of local government or publicly funded entity acquires real property that causes the displacement of people, business or farm operation, the said state agency, unit of local government or publicly funded entity shall provide relocation payments and assistance as provided in N.J.A.C. 5:11-3 and 4 ...
....

*632 (c) The eligibility date of this section shall be the date of the first written offer to purchase the property.

(Emphasis added.)
N.J.A.C. 5:11-4 provides.

Whenever a displacing agency determines that their activities shall cause a displacement of individuals or businesses that are eligible for relocation payments and assistance, the displacing agency shall notify those individuals and businesses, in writing at the earliest possible date of the benefits and obligations of the Act and the chapter. Said notice shall be issued immediately upon the determination of the displacing agency that displacements shall occur. The notice shall contain the nature and the types of payment and assistance available, the eligibility criteria, and a notice that the displaced should not vacate the property prior to being authorized to do so in order to remain eligible for payment and assistance and that they should continue to pay rent to the landlord as provided by law. (Emphasis added.)
CRDA asserts that in offering relocation assistance to plaintiff's tenants it was merely complying with its obligations under the Relocation Assistance Act. Plaintiff argues that under that Act a tenant's eligibility for relocation assistance originates only after the filing of a declaration of taking by the condemnor. There is nothing, however, in either the Eminent Domain Act or the Relocation Assistance Act to support plaintiff's position.
The purpose of the Relocation Assistance Act is to insure assistance in a manner that is fair and reasonable. Toward that end, a condemnor is required to give notice of eligibility for assistance at the earliest possible date once it has determined that its activities will cause a displacement of people. N.J.A.C. 5:11-4. Under the Eminent Domain Act, the earliest possible time for filing a declaration of taking is contemporaneous with the filing of a complaint. N.J.S.A. 20:3-17. However, it is clear that the condemnor's determination that its activities will cause displacement of people will always precede the filing of the complaint (and declaration of taking). N.J.S.A. 20:3-6 requires that a period of bona fide negotiations with the property owner must precede the filing of the complaint and obviously, a condemnor would not make an offer to acquire property and engage in negotiations unless it had first determined that it needed the property for its public purposes which of necessity would cause eventual displacement of *633 people on the property. In this case, the massive nature of the ongoing project made it abundantly clear that everyone in the taking area would be displaced by CRDA's acquisition. If CRDA were to have waited until it filed its declarations of taking before giving the tenants notice of eligibility for relocation assistance, it would have failed to comply with N.J.A.C. 5:11-4.
The problem in this case lies in the fact that CRDA did not file its complaint in condemnation until seven months after it notified plaintiff's tenants of its plans to acquire the property and CRDA did not move to physically take the property until ten months following the initial notice. In the interim, the tenants moved out, causing the owner to suffer a loss of rental income while still being burdened with the costs of ownership.
N.J.A.C. 5:11-4 states that the displacing agency shall send the individuals who will be displaced a notice that they should not vacate the property before being authorized to do so, in order to remain eligible for payment and assistance and that they should continue to pay rent to the landlord as provided by law. CRDA did not comply with this provision of the administrative code. This omission, however, is insufficient to create liability on the part of CRDA toward the property owner. At most it would mean that tenants who moved out without CRDA's authorization might not be disqualified for relocation assistance. Whether the tenants moved out early as a result of CRDA's relocation assistance or whether they moved out on their own, knowing that with condemnation imminent they would necessarily have to relocate, is not clear from the materials presented with this motion. Under either circumstance, however, the court must conclude that plaintiff is not entitled to damages. When a property owner has been deprived of the use and enjoyment of his property, the courts have not measured damages in the form of lost profits. State Commission of Transp. v. Cooper Alloy Corp., 136 N.J. Super. 560, 568, 347 A.2d 365 (App.Div. 1975).
This result is not without its problems. The court recognizes that the owner continued to bear ownership responsibility for the *634 vacant properties during the prolonged negotiation period between CRDA's initial offer and the filing of the complaint in condemnation. This exact problem was recognized by the Eminent Domain Revision Commission. Report of Eminent Domain Revision Commission of New Jersey 24 (1965). Our Supreme Court also noted the problem and how it was particularly exacerbated in cases where there had been a declaration of blight:
A declaration of blight is one of the only steps in an urban renewal project. Experience has shown that there is generally a considerable interval of time between such an announcement and the eventual acquisition  whether by purchase or condemnation  of property located in the blighted area ... From the time it becomes generally known that an area has been selected as the site of the urban renewal project ... there ceases to be a ready market for premises within the area. It becomes difficult to find tenants and impossible to enter into long-term leases. Upkeep, maintenance and renovation cease; the value of the property tends constantly to diminish.
[Washington Market Enter. v. City of Trenton, 68 N.J. 107, 119-20, 343 A.2d 408 (1975).]
The legislative solution to the problem, however, is not an award for lost profits. Such a remedy was explicitly considered by the Eminent Domain Revision Commission but the Commissioners could reach no agreement on a recommendation. Report of Eminent Domain Revision Commission of New Jersey 32-34 (1965). The issue raised in the Report was before the Legislature at the time of passage of the Eminent Domain Act of 1971. The Legislature chose not to include such a remedy in that Act. Instead, the Legislature dealt with the problem by providing for a choice of alternate valuation dates to be used in determining just compensation for the taking.
In cases of blight, the problem was addressed by N.J.S.A. 40:55-21.10. With respect to this statute, our Supreme Court observed:
The statute adopted by our legislature in 1967 to which reference is made above, decreed that a property owner would receive an award in condemnation no less than the value of his property on the date of the declaration of blight. This was an important legislative response to the problem, which had been identified and discussed in the Report of the Eminent Domain Revision Committee of New Jersey 24-28 (1965). Where there eventually is a condemnation action resulting in *635 an award to the landowner, the statute should go far to right of what might otherwise be grave injustice.
[Washington Market, supra, 68 N.J. at 120, 343 A.2d 408.]
Situations not involving blight are addressed by N.J.S.A. 20:3-30 which provides:
Just compensation shall be determined as of the date of the earliest of the following events: (a) the date possession of the property being condemned is taken by the condemnor in whole or in part; (b) the date of the commencement of the action; (c) the date on which action is taken by the condemnor which substantially affects the use and enjoyment of the property by the condemnee.
If, in this case, the tenants left as the result of CRDA's relocation assistance activities, the property owner may have been deprived of the use and enjoyment of the property as of the respective dates of their leaving and thereby be entitled to an earlier valuation date. However, the determination of the appropriate date for measuring compensation is an issue to be raised in the companion condemnation action, not this case.
It must be remembered that the statutory requirement for pre-complaint negotiations was designed so that in most cases the property owner would benefit by avoiding litigation and its attendant costs. Unfortunately, optimal results in every case cannot be guaranteed. As our Supreme Court noted in Washington Market:
While the results of these rules are sometimes harsh and seemingly inconsistent, it must be borne in mind that they represent pragmatic legislative and judicial responses to practical problems rather than being products of refined knowledge. See United States v. Reynolds, 397 U.S. 14, 90 S.Ct. 803, 25 L.Ed.2d 12 (1970).
[Id., 68 N.J. at 113, 343 A.2d 408.]
For the reasons stated herein, defendant's motion for summary judgment is granted.