**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3762-20

GEORGE E. PEARSON,

    Plaintiff-Appellant,

v.

BOROUGH OF KEANSBURG,
BOROUGH OF KEANSBURG
POLICE DEPARTMENT,
KEANSBURG BOARD OF
EDUCATION, and JOHN NIESZ,
KEANSBURG
SUPERINTENDENT OF
SCHOOLS,

    Defendants-Respondents.

_____

Argued October 6, 2022 – Decided October 24, 2022

Before Judges Sumners, Geiger, and Berdote Byrne.

On appeal from the Superior Court of New Jersey, Law Division, Monmouth County, Docket No. L-4135-18.

John C. Feggeler, Jr., argued the cause for appellant.

Michael A. Pattanite, Jr., argued the cause for respondents Keansburg Board of Education and John

Niesz, Keansburg Superintendent of Schools (Lenox, Socey, Formidoni, Giordano, Lang, Carrigg & Casey, LLC, attorneys; Michael A. Pattanite, Jr., on the brief).

Brian P. Trelease argued the cause for respondents Borough of Keansburg and Borough of Keansburg Keansburg Police Department (Rainone Coughlin Minchello, LLC, attorneys; Brian P. Trelease, of counsel and on the brief).

PER CURIAM

Plaintiff George E. Pearson appeals from Law Division orders: (1) granting summary judgment dismissing his claims against defendants Keansburg Board of Education (Board), Superintendent of Schools John Niesz (Niesz), Borough of Keansburg (Borough), and Borough of Keansburg Police Department (KPD); and (2) denying plaintiff's motion for partial summary judgment. We affirm each of the orders.

We glean the following facts from the summary judgment record, viewing them in the light most favorable to the non-moving party. See Richter v. Oakland Bd. of Educ., 246 N.J. 507, 515 (2021).

Pritchard Industries, Inc. (Pritchard) had a contract (the Contract) with the Board to provide custodial services for the schools in the Borough of Keansburg School District (District). Plaintiff, who is African American, was employed as a custodian by Pritchard from July 30, 2015 to November 28, 2016. Plaintiff

was assigned by Pritchard as the head custodian at the District's Joseph Caruso Elementary School (elementary school).

The Contract expressly provided that "Pritchard will perform its services hereunder as an independent contractor, and nothing in this Agreement shall be deemed to make Pritchard, or its employees, a common law employee, agent, partner or fiduciary of, or joint venturer with, District." The Contract further provides that all personnel actions with respect to the Pritchard employees "shall be the sole responsibility of Pritchard." The Contract also states: "If a Pritchard Manager or Service employee should become unacceptable to District's Chief Executive Officer or such officer's designated representative, then District's Chief Executive Officer or designated representative may request his or her removal and Pritchard will provide a mutually acceptable replacement within a reasonable time thereafter." The term "unacceptable" is not defined in the Contract. The Contract requires the District to "provide Pritchard with reasonable office space, storage and locker space, warehouse and distribution space and services at District Facilities, at no cost to Pritchard" while they perform work for the District.

Plaintiff was furnished with a key to the elementary school. On Sunday, November 27, 2016, plaintiff used that key to gain unauthorized entrance to the

elementary school during non-school hours to run laps with his son in the school's gymnasium.

Plaintiff was previously assigned to the District's high school. There he requested and was granted permission by the high school's athletic director, to use the high school gym. That permission did not extend to the District's other schools. Plaintiff did not request permission to use the elementary school's gym after his transfer to that school.

Pritchard issued guidelines to its employees. The guidelines state: "Never use customer property for any reason." They also state: "Always return keys that are given to you each night after you have finished your work."

On the date of the incident, a security guard was on duty at the elementary school. The guard observed plaintiff and his son using the gym and contacted police stating that she did not know if plaintiff's entry into the school was authorized. KPD Officer Francis Wood responded to the elementary school. Plaintiff advised Wood that he was permitted to be in the gym because he was the school's custodian. Shortly after speaking with plaintiff, Wood departed from the elementary school without further action. Plaintiff and his son remained at the elementary school and proceeded to work out in the gym.

A-3762-20

The following day, Niesz spoke with the security guard about what had transpired. Niesz instructed Officer John Sorano, the District's school resource officer, to review the video tape recording from the elementary school from the prior evening. Officer Sorano reviewed the video tape and reported to Niesz that the video footage showed plaintiff "was in the gym." Plaintiff was removed from performing services under the Contract and terminated by Pritchard.

That same day, the District informed Pritchard that they were barring plaintiff from working in the District for entering the elementary school premises at an off-hour while school was not in session. It is undisputed that plaintiff's access to the school on November 27, 2016, was not related to his employment with Pritchard. This litigation followed.

On May 2, 2019, plaintiff filed a seven-count complaint alleging: (1) a discrimination claim against the KPD, Board, and Niesz under the New Jersey Law Against Discrimination (LAD), N.J.S.A. 10:5-1 to -42; (2) a hostile work environment claim under LAD against the Board and Niesz; (3) claims against the Board and Niesz under Title VII of the Civil Rights Act of 1964 and 42 U.S.C. §§ 2000e to 2000e-17; (4) a violation of civil rights claim against the Board and Niesz under 42 U.S.C. § 1983; (5) tortious interference with a

contractual relationship against the Board and Niesz; (6) negligence against the Board and Niesz; and (7) negligence against the Borough and KPD.

In August 2019, the Board and Niesz moved pursuant to Rule 4:6-2(e) to dismiss the LAD hostile work environment claim, Section 1983 claim, tortious interference with a contractual relationship claim, and negligence claim, for failure to state a claim upon which relief may be granted. The court issued an order dismissing the LAD hostile work environment and negligence claims against the Board and Niesz. Discovery related to the remaining claims continued.

Plaintiff acknowledged during his deposition that after being moved from the high school to the elementary school, he never sought permission from the principal or his Pritchard supervisor to use the elementary school gym. Nor did plaintiff fill out any type of District form requesting to use the elementary school gym.

Plaintiff testified he reported to the elementary school principal. Plaintiff also took direction from whomever had a problem inside the elementary school.

Niesz acknowledged at his deposition the KPD officers have permission to use District facilities such as school gymnasiums. The KPD was entirely Caucasian at the time.

A-3762-20

Niesz testified that he did not have the authority to fire plaintiff as plaintiff worked for Pritchard, not the District. He acknowledged he requested that plaintiff be removed from performing services in the District under the Contract. Niesz testified there is a blanket District policy providing that no one is permitted to enter District buildings and use District facilities "without filling out what's called a use premise request."

Niesz testified that he was a defendant in litigation brought against him as the Superintendent of the Bayonne City Schools by a person who claimed she was passed over for a position.

Following the completion of discovery, plaintiff moved for partial summary judgment against the Board and Niesz on his tortious interference with a contractual relationship claim. Defendants moved for summary judgment on all remaining claims. On July 13, 2021, the court issued an oral decision and orders that denied plaintiff's motion and granted defendants summary judgment dismissing all remaining claims with prejudice.

This appeal followed. Plaintiff raises the following points for our consideration:

POINT ONE

STANDARD OF APPELLATE REVIEW.

7

POINT TWO

THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT IN FAVOR OF DEFENDANTS AS TO PLAINTIFF'S CAUSE OF ACTION FOR TORTIOUS INTERFERENCE WITH THE CONTRACT BETWEEN THE PLAINTIFF AND PRITCHARD INDUSTRIES.

A. Actual Interference with Pritchard-Plaintiff Contract.

B. Interference was Inflicted Intentionally.

C. Interference was Without Justification.

D. The Interference Caused Damage.

POINT THREE

THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT IN FAVOR OF DEFENDANTS BOROUGH OF KEANSBURG AND BOROUGH OF KEANSBURG POLICE DEPARTMENT AS GENUINE ISSUES OF MATERIAL [FACT] REMAIN IN DISPUTE.

POINT FOUR

DEFENDANTS BOROUGH OF KEANSBURG AND BOROUGH OF KEANSBURG POLICE DEPARTMENT OWED A DUTY OF CARE TO THE PLAINTIFF.

POINT FIVE

THE TRIAL COURT ERRED IN FINDING THAT PLAINTIFF WAS NOT AN EMPLOYEE FOR THE

PURPOSES OF LAD, TITLE VII OF CIVIL RIGHTS ACT OF 1964, AND 42 U.S.C. § 1983 PROTECTION.

POINT SIX

THE TRIAL COURT ERRED IN HOLDING THAT PLAINTIFF DID NOT SATISFY THE BURDEN IMPOSED UPON HIM TO ESTABLISH DISCRIMINATION.

We affirm substantially for the reasons expressed by the judge in her comprehensive oral decision. We add the following comments.

A motion for summary judgment must be granted "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law." R. 4:46-2(c). The court must "consider whether the competent evidential materials presented, when viewed in the light most favorable to the non-moving party, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party." Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995).

"To decide whether a genuine issue of material fact exists, the trial court must 'draw[] all legitimate inferences from the facts in favor of the non-moving party.'" Friedman v. Martinez, 242 N.J. 449, 472 (2020) (alteration in original)

9

(quoting Globe Motor Co. v. Igdalev, 225 N.J. 469, 480 (2016)).  "The court's function is not 'to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.'"  Rios v. Meda Pharm., Inc., 247 N.J. 1, 13 (2021) (quoting Brill, 142 N.J. at 540).

We review the grant or denial of a motion for summary judgment de novo, applying the same standard used by the trial court.  Samolyk v. Berthe, 251 N.J. 73 (2022).  We consider "whether the competent evidential materials presented, when viewed in the light most favorable to the non-moving party, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party."  Brill, 142 N.J. at 540.

Tortious Interference with Contractual Relations

In count five of his amended complaint, plaintiff alleges the Board and Niesz tortiously interfered with his employment contract with Pritchard.

> To establish a claim for tortious interference with contractual relations, a plaintiff must prove:  (1) actual interference with a contract; (2) that the interference was inflicted intentionally by a defendant who is not a party to the contract; (3) that the interference was without justification; and (4) that the interference caused damage.
>
> [Russo v. Nagel, 358 N.J. Super. 254, 268 (App. Div. 2003) (citing 214 Corp. v. Casino Reinvestment Dev. Auth., 280 N.J. Super. 624, 628 (Law. Div. 1994)).]

As to the second prong of that test, the judge noted plaintiff asserted that Niesz individually and as a representative of the Board, was not a party to the Pritchard/plaintiff employment contract yet requested that plaintiff be terminated from employment at the District's schools. The judge noted, however, that Niesz requested that plaintiff be removed from employment at the district under the Pritchard/District contract, not terminated from employment with Pritchard altogether. We agree. The record shows that Niesz directed Pritchard to remove plaintiff from working at any of the District's schools because he was not acceptable. Neither Niesz nor the Board asked or demanded that plaintiff be fired by Pritchard. Pritchard made the decision to terminate plaintiff's employment.

The judge found that viewing the facts in the light most favorable to plaintiff, there was no evidence to suggest that Niesz or the Board requested Pritchard to fire plaintiff or otherwise intended to interfere with plaintiff's employment contract with Pritchard. The judge explained that although defendants' request to remove plaintiff from working at District schools "may have influenced Pritchard's decision to terminate plaintiff does not amount to a showing of intentional interference" with plaintiff's employment by Pritchard

11

"as a matter of law." Accordingly, the judge found plaintiff could not satisfy the second prong. We agree.

As to the third prong, which requires that the interference is without justification, the judge noted Niesz clarified that plaintiff could not be allowed to remain working at District schools because he and his son entered the elementary school without permission. The fact that the security guard and responding police officer did not remove plaintiff and his son from the building was not controlling. Plaintiff was aware of Pritchard's policy that employees should never use customer property for any reason for non-work purposes. The judge found that having an authorized work key to access the school for work purposes did not equate to permission for plaintiff to use the key to access the school for non-work purposes.

Nor did the fact that plaintiff at one time had permission to use the high school gym confer plaintiff with the right to use any gym at any school in the district without obtaining permission from the District or its authorized representative. The judge also found that there was no indication in the record that plaintiff sought permission to use the elementary school's gym from his Pritchard supervisor.

The judge nevertheless concluded there was a question of fact whether plaintiff's removal from working at the District's schools was justified under the terms of the Contract due to being caught trespassing on school property in violation of District policy. We part company with the judge in that respect. The judge found "there is no evidence that defendants intended for plaintiff to be terminated from his employment with Pritchard" rather than just being removed from working at the District's schools. The record supports that finding.

Undisputed facts in the record demonstrate that plaintiff did not request or obtain permission to use the elementary school's gymnasium when the school was closed. Plaintiff and his son entered the school when it was closed to use the gym in violation of District policy and Pritchard's employee policy. The Board's decision to remove plaintiff from working at its schools was justified under these circumstances. Therefore, plaintiff cannot satisfy the third prong.

plaintiff was unable to satisfy the second and third prongs. His tortious interference claims against the Board and Niesz were properly dismissed.

LAD, Title VII, and Section 1983 Claims Against the Board and Niesz

The LAD prohibits unlawful employment discrimination. N.J.S.A. 10:5-12; Viscik v. Fowler Equip. Co., 173 N.J. 1, 13 (2002). "The LAD was enacted

13

to protect not only the civil rights of individual aggrieved employees but also to protect the public's strong interest in a discrimination-free workplace." Lehman v. Toys R Us, Inc., 132 N.J. 587, 600 (1993) (citing Fuchilla v. Layman, 109 N.J. 319, 334 (1988)). The LAD prohibits an employer from engaging in discrimination based on race against any individual by "refus[ing] to hire or employ or to bar or to discharge . . . from employment such individual." N.J.S.A. 10:5-12.

New Jersey has adopted the procedural burden-shifting methodology set forth in McDonnel Douglas Corp. v. Green, 411 U.S. 792 (1973). Zive v. Stanley Roberts, Inc., 182 N.J. 436, 447 (2005). To establish a prima facie case of discriminatory discharge, plaintiff must prove: "(1) he was in the protected group; (2) he was performing his job at a level that met his employer's legitimate expectations; (3) he nevertheless was fired; and (4) the employer sought someone to perform the same work after he left." Zive, 182 N.J. at 450.

The judge noted that in Pukowsky v. Caruso we stated that "independent contractors are not to be considered 'employees' within the meaning of the LAD, and are therefore not entitled to avail themselves of its protections." 312 N.J. Super. 171, 180 (App. Div. 1998) (citing Lehman,132 N.J. at 600-01). We agree that independent contractors cannot recover under the LAD.

Plaintiff argues that the judge incorrectly concluded that he did not qualify as an employee of the Board to obtain protection under the LAD. We disagree. The judge applied the twelve-factor test adopted in Pukowsky for determining a worker's status as an employee or an independent contractor. 312 N.J. Super. at 182-83. Upon doing so, the judge found that the factors "overwhelmingly weigh in favor of plaintiff's status as an independent contractor." The record supports those findings.

The judge also found that the plain language of the Contract identified Pritchard's workers as independent contractors. The judge found this designation to be "fatal" as to counts one, three, and four of plaintiff's amended complaint. We concur that plaintiff cannot recover against the Board or Niesz under the LAD.

Plaintiff was employed by Pritchard, not the Board. Pritchard was an independent contractor of the Board. The LAD did not create a cause of action for employment discrimination against entities or persons that are not the claimant's employer. See Pukowsky, 312 N.J. Super. at 180; N.J.S.A. 10:5-12(a) (stating it is "unlawful discrimination [f]or an employer" to discriminate against an individual because of race). Plaintiff had no viable cause of action against the Board or Niesz because they were not his employer.

15

Regarding the substance of plaintiff's claims under LAD, Title VII, and Section 1983, the judge found no evidence that would support a finding of any form of discrimination by the Board or Niesz, much less discrimination based on race. The judge noted that plaintiff's arguments in support of his LAD, Title VII, and Section 1983 claims were similar to his tortious interference arguments. The judge reiterated that "there is no evidence that defendants intended for plaintiff to be terminated from his employment with Pritchard." On the contrary, the judge stated "there's nothing to show any intent, any malice, any . . . intention" on the part of Niesz "that he intended that . . . plaintiff be terminated from his contract with . . . Pritchard. It's just not there." Because there was no evidence of malicious and intentional interference by the Board or Niesz, the court concluded that defendants' motions for summary judgment should be granted.

We concur. Aside from the fact that the Board was not plaintiff's employer, plaintiff has not produced any evidence that the Board or Niesz engaged in racial discrimination or violated his civil rights.

The fact that the District allowed KPD officers, who were all Caucasian, to use the weight room at the high school does not demonstrate the Board treated plaintiff differently. First, the KPD officers were given permission to use that

16

facility. Second, plaintiff himself was given permission to use the gymnasium at the high school when he asked for it. When plaintiff was transferred to the elementary school, he neither sought nor obtained permission to use the elementary school's gym. Contrary to school policy, he and his son used the gym anyway.

Plaintiff's reliance on Niesz being named as a defendant in a separate action involving the Bayonne School District is misplaced. The unproven allegations raised in that action relate to unconnected subsequent events.

Negligence Claim Against the KPD

Relying on Adams v. City of Camden, 461 F. Supp. 2d 263, 266 (D.N.J. 2006) (citing N.J.S.A. 40A:14-118), the judge explained that "a municipal police department is not an entity separate from the municipality." Therefore, the court concluded "a police department cannot be sued in conjunction with a municipality because they are . . . administrative arms of local municipalities, not separate entities." Plaintiff did not oppose dismissal of the KPD. The judge dismissed the claims against the KPD with prejudice. The KPD is not a separate legal entity from the Borough. Claims seeking liability for actions of municipal police officers are properly brought against the municipality, not the police department. Naming the police department as a defendant is legally equivalent

to naming the municipality. Accordingly, we analyze plaintiff's negligence claims as though they were brought against the Borough.

Negligence Claim Against the Borough

Negligence claims against public entities in New Jersey are governed by the New Jersey Tort Claims Act (TCA), N.J.S.A. 59:1-1 to 12-3. As a general proposition, liability of public entities is the exception and immunity from liability is the rule under the TCA. Fluehr v. City of Cape May, 159 N.J. 532, 539 (1999); see also N.J.S.A. 59:1-2 (declaring it "to be the public policy of this State that public entities shall only be liable for their negligence within the limitations of [the TCA] and in accordance with the fair and uniform principles established [t]herein"); D.D. v. Univ. of Med. & Dentistry of N.J., 213 N.J. 130, 133-34 (2013) (explaining that the overall approach of the TCA is to broadly limit public entity liability). To that end, the public policy adopted by the Legislature is to construe the immunity provisions of the TCA broadly and the liability provisions narrowly. Gerber v. Springfield Bd. of Educ., 328 N.J. Super. 24, 34 (App Div. 2000).

The trial court noted that plaintiff did not respond to any of the defenses raised by the Borough under the TCA. Instead, plaintiff raised a new argument regarding the actions of Officer Sorano, which was not pled in the original or

amended complaint. Sorano was not named as a defendant in the amended complaint.

Plaintiff alleges that Sorano negligently relayed what he had seen on the surveillance footage to Niesz. Plaintiff claims it is for the jury to determine whether Sorano purposely provided a false account of the video surveillance footage to Niesz. The Borough responded that there is nothing in the record that suggests Sorano was not truthful when he testified that he told Niesz that plaintiff remained in the gymnasium. The Borough further argued that it is not liable for the intentional acts of its employees under the TCA. See N.J.S.A. 59:2-10 ("A public entity is not liable for the acts or omissions of a public employee constituting . . . actual malice, or willful misconduct."). The Borough also argued that plaintiff's theory that Sorano and Niesz conspired together to exonerate Niesz failed for the same reason of intentionality.

The judge found that plaintiff mischaracterized Sorano's deposition testimony. Sorano testified that the camera footage of the incident showed plaintiff and his son in the elementary school gym and that plaintiff's son was doing some type of physical activities in the gym. The judge noted Sorano did not testify that he told Niesz plaintiff was allowed to remain in the gym.

19

In addition, the judge found plaintiff's claims involving Sorano were improperly raised for the first time in opposition to the summary judgment motion and were not a basis to find that an issue of material fact existed sufficient to defeat the Borough's motion for summary judgment.

The judge then addressed the Borough's affirmative defenses under the TCA. The Borough asserted immunity under N.J.S.A. 59:2-2(b) because Wood was immune under N.J.S.A. 59:3-2(a) for exercising the judgment and discretion vested in him in performing an investigation of an unknown male on the premises of the school on the date of the incident. The judge found Wood was vested with the judgment and discretion to permit plaintiff to remain in the gymnasium based upon the information provided by the security guard's supervisor. As such, the judge concluded the TCA's discretionary immunity exception to liability applied. The judge found there were no material facts in dispute regarding whether Wood's actions were undertaken in good faith and were objectionably reasonable. Therefore, Wood was entitled to immunity from plaintiff's negligence claims under N.J.S.A. 59:3-2(a) and N.J.S.A. 59:3-3.[1] In

---

[1] N.J.S.A. 59:3-2(a) provides that "[a] public employee is not liable for an injury resulting from the exercise of judgment or discretion vested in him." N.J.S.A. 59:3-3 provides that "[a] public employee is not liable if he acts in good faith in the execution or enforcement of any law."

 A-3762-20

turn, pursuant to N.J.S.A. 59:2-2(b), "[a] public entity is not liable for an injury resulting from an act or omission of a public employee where the public employee is not liable."

For these reasons, the trial court granted summary judgment dismissing plaintiff's claims against the Borough with prejudice. We concur that there was no viable cause of action against the Borough for the actions or inactions of Officers Wood and Sorano. The claims against the Borough were properly dismissed with prejudice.

To the extent we have not expressly addressed plaintiff's remaining arguments, we conclude they lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION