**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4179-18T3

NADINE HELLER,

    Plaintiff-Appellant,

v.

MIDDLESEX COUNTY
COLLEGE, JOANN
LAPERLA-MORALES,
DAVID EDWARDS, and
WALTER DEANGELO,

    Defendants-Respondents.

_____

        Submitted September 15, 2020 – Decided October 29, 2020

        Before Judges Gilson and Moynihan

        On appeal from the Superior Court of New Jersey, Law Division, Middlesex County, Docket No. L-7433-15.

        James P. Gianakis, attorney for appellant.

        Kelso & Burgess, attorneys for respondent Middlesex County College (Kurt J. Trinter, on the brief).

        Martin, Kane, Kuper, LLC, attorneys for respondent Joann LaPerla-Morales (John W. Harding, on the brief).

Hoagland, Longo, Moran, Dunst & Doukas, attorneys for respondent David Edwards (Jennifer Passannante, of counsel and on the brief).

Dvorak & Associates, LLC, attorneys for respondent Walter DeAngelo, join in the brief of respondent Middlesex County College.

PER CURIAM

Plaintiff Nadine Heller is an associate professor at Middlesex County College (MC College). She sued MC College and three senior administrators: then-President Joann LaPerla-Morales, then-Dean David Edwards, and then-Director of Human Resources Walter DeAngelo. Plaintiff contended that defendants violated the Conscientious Employee Protection Act (CEPA), N.J.S.A. 34:19-1 to -14, and engaged in gender discrimination, harassment, and retaliation in violation of the New Jersey Law Against Discrimination (LAD), N.J.S.A. 10:5-1 to -49. She also claimed defendants committed several torts and unjustly enriched themselves at her expense.

Plaintiff appeals from orders denying her request to compel and extend discovery, granting summary judgment to defendants, and dismissing all her claims. She also appeals from several orders denying motions for reconsideration. We affirm the orders concerning discovery and reconsideration. We affirm in part and reverse in part the orders granting

2

summary judgment to defendants. Specifically, we affirm the orders granting summary judgment to LaPerla-Morales and DeAngelo. We also affirm the orders that dismissed with prejudice plaintiff's tort and unjust enrichment claims against MC College and Edwards. Moreover, we affirm the orders that dismiss with prejudice plaintiff's LAD claim based on retaliation. We reverse and remand plaintiff's claims against MC College and Edwards under CEPA and LAD gender discrimination and harassment.

I.

We summarize the relevant facts from the record, viewing them in a light most favorable to plaintiff, the non-moving party. Globe Motor Co. v. Igdalev, 225 N.J. 469, 480 (2016) (citing R. 4:46-2(c)). In March 2008, plaintiff was hired by MC College as an assistant professor and chair of the Visual Performing and Media Arts Department (VPMA Department). As an assistant professor, plaintiff was a member of the MC College faculty and had various teaching responsibilities. Five years later, in March 2013, she was tenured as an associate professor. Plaintiff is still employed in that position.

As chair of the VPMA Department, plaintiff was a member of the administration and was responsible for overseeing the department, including its staff, budget, and programs. She reported to and coordinated with the Dean of

Arts and Sciences if she wanted to change the department's curriculum, budget, or faculty. Edwards held the position of Dean of Arts and Sciences from August 2010, when he joined MC College, until July 2016, when he left the college for other employment.

In February 2013, MC College conducted a performing arts exhibit known as "Radio Heads." The exhibit included an outdoor radio tower, which stood approximately twenty feet high and played music. The construction of the tower was overseen by Tony Ross, who was responsible for theater production sets at MC College. Ross was a member of the VPMA Department and reported to plaintiff.

Several safety concerns were raised after the tower's construction, and it was ultimately taken down. President LaPerla-Morales believed Ross should be disciplined because the tower had not been properly constructed. Accordingly, Edwards directed plaintiff to issue a letter of discipline to Ross. Plaintiff objected, informing Edwards that she did not think Ross should be disciplined, and she believed the letter did not comply with union discipline procedures. Nevertheless, plaintiff issued the letter to Ross because she was up for tenure and felt threatened by Edwards.

A-4179-18T3

Later, Ross filed a grievance concerning the discipline. Eventually, Ross's union and MC College resolved the dispute by removing the letter from his personnel file and replacing it with an advisory memorandum that was part of Ross's evaluation.

Plaintiff asserts that following the radio tower incident, Edwards began to retaliate against her. She claims that over the next two years, Edwards (1) set up meetings with her, but then did not hold the meetings; (2) failed to tell her about other meetings until just before the meeting so she was not prepared; (3) set and thereafter changed his expectations; (4) stopped regularly communicating with plaintiff and ignored reports from her; (5) cut financial support to the VPMA Department; (6) took control of theater productions away from her; (7) engaged in "repeated inflammatory and defamatory rhetoric to and about plaintiff and her performance"; and (8) gave her a poor performance evaluation in September 2014.

Plaintiff contends that she raised her concerns about Edwards's improper treatment of her to numerous administrators at MC College. Those administrators included Dean Marlene Laskowski-Sachnoff; Assistant Dean Kathleen Perle; Laura Cahill, a member of the Human Resources Department; Alison Rolling, a member of the Human Resources Department; Warren

5

Kelemen, a special advisor to the president of MC College; and Cathy Lynch, Director of Labor and Human Resources.

In November 2014, Lynch initiated an investigation into plaintiff's concerns about Edwards. That investigation was conducted by the outside law firm, Wilentz Goldman & Spitzer. Plaintiff asserts she was never given a copy of the resulting report. A copy of the report was produced in discovery and was included in a confidential appendix submitted to us. The investigation focused on the radio tower incident and plaintiff's claims of retaliation by Edwards. The report ultimately concluded that there was nothing "illegal or improper about the actions complained of by [plaintiff]."

Separate from the radio tower incident, plaintiff claims that she reported eight complaints of harassment by female MC College students, but MC College failed to take timely responsive action. For example, plaintiff asserts that in April 2014, she told Edwards that a female student reported that she had been sexually harassed by MC College's Director of Facilities. According to plaintiff, Edwards told her to "bury" the incident.

Plaintiff also claims she reported other student complaints concerning sexual and gender harassment to MC College administrators, but the college failed to investigate those complaints or to follow up with the students. In

6

addition, plaintiff contends that she gathered documents and information that were provided to the federal Office of Civil Rights. Thereafter, the Office of Civil Rights launched an investigation under Title IX of the Education Amendments Act of 1972, 20 U.S.C. §1681.

MC College disputes plaintiff's claims concerning the student complaints. The college asserts that most of the reports of student complaints were made by Amanda Lyons and plaintiff was not the person who made the complaints to the Office of Civil Rights. MC College also maintains that its Human Resources Department investigated the student-harassment claims. The students were interviewed, and a report of their claims was submitted to senior administrators at the college.

In December 2014, plaintiff was notified that she would not be renewed as chair of the VPMA Department. She asserts that the decision was made in retaliation for her complaints about the improper discipline of Ross for the radio tower incident and her complaints about student-harassment claims.

In contrast, MC College asserts that plaintiff was removed as chair because of her poor performance. According to MC College, all chair positions at the college are contractual positions subject to annual renewal. The decision to not renew plaintiff as chair of her department was made by Mark McCormick,

with input from Edwards. McCormick had joined MC College in August 2014 as Vice President of Academic and Student Affairs. McCormick and Edwards had concerns about plaintiff's management of the VPMA Department, including her ability to handle budget and personnel issues.

Plaintiff was removed as chair of the VPMA Department in mid-December 2014. Initially, she was replaced by Assistant Dean Terry Orosz, who acted as an interim chair. Thereafter, Amy Hogan was hired as the new chair. Both Orosz and Hogan are women. Following her removal as chair, plaintiff continued to be a member of the administration and her salary and benefits did not immediately change. She also continued to hold the position of associate professor at the college.

On January 15, 2015, plaintiff's lawyer sent McCormick a letter concerning plaintiff's non-renewal as chair and her employment status at the college. Thereafter, plaintiff requested and received administrative leave for the spring 2015 semester. She returned in the fall of 2015 and worked as an associate professor. She contends, however, that she was required to teach at night and at inconvenient locations. She also asserts that she was required to work four days a week while other professors were permitted to work three days a week.

8

On December 10, 2015, plaintiff sued MC College, LaPerla-Morales, Edward, and DeAngelo. She asserted nine causes of action: (1) violations of CEPA; (2) violations of LAD based on gender discrimination; (3) violations of LAD based on harassment because of her gender; (4) violations of LAD based on retaliation; (5) defamation; (6) tortious interference; (7) unjust enrichment; (8) intentional infliction of emotional distress; and (9) negligent infliction of emotional distress.

Defendants filed answers and the parties engaged in discovery for over three years. During discovery, documents were exchanged, and all the parties, as well as other witnesses, were deposed. Discovery was initially set to close in April 2017, but that deadline was extended several times, and discovery finally closed on February 15, 2019.

Defendants moved for summary judgment on two occasions. Defendants first filed for summary judgment in February 2018. Following several adjournments, on June 1, 2018, the trial court granted summary judgment in favor of all defendants. Plaintiff sought reconsideration, contending that she was still seeking discovery. The court granted reconsideration, vacated the June 1, 2018 order, and allowed plaintiff to file a motion to reopen discovery.

A-4179-18T3

Plaintiff did not move to reopen discovery in 2018. In September 2018, the court scheduled the trial for December 3, 2018. Defendants filed their second round of summary judgment motions in late September and early October 2018.

In November 2018, on its own initiative, the court reopened discovery, established February 15, 2019, as a new end date for discovery, and adjourned defendants' summary judgment motions until March 2019.

On January 9, 2019, plaintiff moved to compel discovery from defendants. Approximately two weeks later, on January 28, 2019, the trial court granted that motion in part and denied it in part. The court ordered defendants to respond with certifications explaining what discovery had been produced, and if certain discovery had not been produced, why it did not exist. Defendants filed certifications on February 11, 2019.

On February 15, 2019, the trial court found that defendants had satisfied their discovery obligation and denied plaintiff's request to compel and extend discovery. On March 6, 2019, plaintiff moved for reconsideration. Defendants filed opposition and cross-moved to bar plaintiff's late discovery request.

After several adjournments, the court heard oral arguments on all pending motions, which included the discovery-related motions and defendants' motion

10

for summary judgment. That same day, the court issued a series of orders (1) denying plaintiff's motion to reconsider the February 15, 2019 order denying her request to compel more discovery and closing discovery; and (2) granting summary judgment in favor of all defendants.

On April 18, 2019, the trial court issued a forty-three-page written opinion explaining its rulings. The court first summarized the procedural history, pointing out that plaintiff's counsel had been less than diligent in pursuing discovery and opposing defendants' summary judgment motions. After summarizing the discovery that had been provided and the extension accorded to plaintiff, the court found no basis to reconsider the denial of plaintiff's requests to compel more discovery or to extend the time to conduct discovery. In making that ruling, the trial court rejected plaintiff's arguments about spoliation of evidence. Instead, the court affirmed its finding that defendants had met their discovery obligations.

Turning to the summary judgment motions, the court pointed out that plaintiff's opposition was replete with factual assertions that failed to cite to the record. Instead, plaintiff had filed a large volume of papers, but did not point out where relevant facts could be found in those papers.

11

The trial court then conducted a comprehensive analysis of plaintiff's causes of actions. Addressing plaintiff's CEPA claims, the court found no evidence establishing a causal link between plaintiff's alleged whistleblower activities – that is, the radio tower incident and the student-harassment complaints – and plaintiff's loss of her chair position.

On plaintiff's LAD claims, the court found that plaintiff failed to present any evidence of direct gender discrimination. The court then found that MC College had put forward a legitimate, non-discriminatory reason for not renewing plaintiff as chair. Thereafter, the court found that plaintiff had failed to submit evidence that those reasons were pretextual. The trial court also rejected plaintiff's LAD-based harassment claims because plaintiff's counsel failed to cite to the record to establish factual support showing a hostile work environment. The court ruled that plaintiff's LAD-based retaliation claim was barred by the waiver provision in CEPA.

Turning to the tort and unjust enrichment claims, the trial court first found that plaintiff had provided sufficient notice under the Tort Claims Act when her counsel sent a letter to MC College on January 15, 2015. The trial court then conducted a thorough analysis of each of the elements of plaintiff's tort claims and claims of unjust enrichment. Ultimately, the trial court found that plaintiff

12

had not submitted evidence to support certain elements of each of those causes of action. Accordingly, the court dismissed those claims.

Plaintiff moved for reconsideration of the April 12, 2019 orders. After affording all counsel the opportunity to expand on the arguments in their papers, the trial court denied plaintiff's motion for reconsideration. The court explained the reasons for its decision on the record on May 24, 2019 and issued a memorializing order that same day.

## II.

Plaintiff now appeals from eight orders: (1) the January 28, 2019 order granting in part and denying in part plaintiff's motion to compel discovery; (2) the February 15, 2019 order denying plaintiff's motion to compel more discovery and extend discovery; (3) the April 12, 2019 order denying plaintiff's motion for reconsideration of the February 15, 2019 order concerning discovery; (4) to (7) the four April 12, 2019 orders granting summary judgment to each defendant; and (8) the May 24, 2019 order denying plaintiff's motion for reconsideration of the April 12, 2019 orders.

On appeal, plaintiff makes three broad-based arguments, with numerous sub-arguments. She contends that the trial court erred in (1) not compelling further discovery from defendants; (2) closing discovery; and (3) granting

13

summary judgment to defendants when there were disputed issues of material fact. We reject plaintiff's arguments concerning the orders related to discovery. We also affirm in part and reverse in part the summary judgment orders.

A.   The Discovery Orders

We review discovery orders for abuses of discretion. Estate of Lagano v. Bergen Cty. Prosecutor's Office, 454 N.J. Super. 59, 80 (App. Div. 2018). Accordingly, we will "sustain[] the trial court's ruling 'unless it can be shown that the trial court palpably abused its discretion, that is, that its findings was so wide of the mark that a manifest denial of justice resulted.'" State v. Lykes, 192 N.J. 519, 534 (2007) (quoting Verdicchio v. Ricca, 179 N.J. 1, 34 (2004)).

Here, we discern no abuse of discretion. Plaintiff filed her complaint in December 2015. Discovery commenced in early 2016. The court established the first end date of discovery in April 2017. That end date was then extended several times until the final close of discovery was set as February 15, 2019. Accordingly, plaintiff had over three years to conduct discovery. During that time defendants responded to plaintiff's discovery demands for documents and all defendants were deposed.

More significantly, plaintiff has not shown that any material information was not produced by defendants. Plaintiff claims she requested certain

documents from defendants that were not produced, but that contention is not supported by the record. The trial court gave plaintiff several opportunities to reopen and compel more discovery. Indeed, the trial court vacated the first order granting summary judgment to defendants and gave plaintiff the opportunity to file a motion to reopen discovery. Plaintiff did not avail herself of that opportunity.

Nevertheless, when defendants refiled their motions for summary judgment, the court again gave plaintiff an opportunity to seek more discovery. In October 2018, plaintiff's counsel sent defendants' counsel a letter identifying numerous documents plaintiff was seeking. Defendants responded, and plaintiff moved to compel more. The court reviewed plaintiff's motion and, on January 28, 2019, entered an order granting in part and denying in part plaintiff's motion to compel additional discovery. Significantly, the court directed defendants to file certifications identifying what documents had been produced and explaining whether other documents sought did or did not exist. Defendants filed such certifications, the court reviewed them, and found that defendants had fully complied with their discovery obligations. Accordingly, on February 15, 2019, the court denied plaintiff's motion to compel further discovery and closed discovery.

15

In short, plaintiff has failed to identify any material discovery not produced by defendants. We therefore affirm the orders of January 28, 2019 and February 15, 2019. Because there was no showing of an abuse of discretion, there was also no showing of a basis for reconsideration concerning the discovery orders. Consequently, we also affirm the April 12, 2019 order and the portion of the May 24, 2019 order that denied plaintiff's motions for reconsideration of the discovery orders.

B.    The Summary Judgment Orders

We review a grant of summary judgment using the same standard that governs the motion court's decision. RSI Bank v. Providence Mut. Fire Ins. Co., 234 N.J. 459, 472 (2018) (citing Bhagat v. Bhagat, 217 N.J. 22, 38 (2014)). Summary judgment will be granted when "the competent evidential materials submitted by the parties," viewed in the light most favorable to the non-moving party, show that there are no "genuine issues of material fact" and that "the moving party is entitled to summary judgment as a matter of law." Grande v. Saint Clare's Health Sys., 230 N.J. 1, 24 (2017) (quoting Bhagat, 217 N.J. at 38); accord R. 4:46-2(c). "An issue of material fact is 'genuine only if, considering the burden of persuasion at trial, the evidence submitted by the parties on the motion, together with all legitimate inferences therefrom favoring the non-

moving party, would require submission of the issue to the trier of fact.'"  Ibid. (quoting Bhagat, 217 N.J. at 38). We owe no special deference to the motion court's legal analysis or its interpretation of a statute.  RSI Bank, 234 N.J. at 472; Hitesman v. Bridgeway, Inc., 218 N.J. 8, 26 (2014).

Initially, we address plaintiff's counsel's failure to cite to the record.  The trial court correctly noted that plaintiff's counsel had failed to provide specific cites to the record when contending that there were material issues of disputed fact.  Given that failure, the trial court could not locate and examine the actual testimony or documents that plaintiff relied on in contending that there were material factual disputes precluding summary judgment in favor of defendants.

In the papers filed before us, plaintiff's counsel continued his practice of making factual assertions without citations to the record.  Nevertheless, there were points where plaintiff's counsel did cite to the record, and we have undertaken an independent review of the record.  That review reveals that many of the claims made by plaintiff's counsel are overstated, misstated, or inaccurate. There are, however, certain material issues of disputed fact that preclude summary judgment in favor of two of the defendants (MC College and Edwards) on plaintiff's claims under CEPA and LAD gender discrimination and harassment.  Under these circumstances, we will not visit the fault of plaintiff's

counsel on plaintiff herself. Instead, we will analyze plaintiff's claims and identify which claims involve disputed issues of material fact precluding summary judgment.

The trial court granted summary judgment to all defendants, dismissing all nine causes of action asserted by plaintiff. We will analyze plaintiff's claims in three categories: (1) Plaintiff's CEPA claims; (2) her LAD claims; and (3) her tort and unjust enrichment claims.

1. Plaintiff's CEPA Claims

CEPA was enacted "to protect and encourage employees to report illegal or unethical workplace activities and to discourage public and private sector employers from engaging in such conduct." Sauter v. Colts Neck Volunteer Fire Co. No. 2, 451 N.J. Super. 581, 588 (App. Div. 2017) (quoting Mehlman v. Mobil Oil Corp., 153 N.J. 163, 179 (1998)). "The statute 'seeks to overcome the victimization of employees and to protect those who are especially vulnerable in the workplace from the improper or unlawful exercise of authority by employers.'" Ibid. (quoting Abbamont v. Piscataway Twp. Bd. of Educ., 138 N.J. 405, 418 (1994)).

CEPA "prohibit[s] an employer from taking retaliatory action . . . against an employee who discloses, threatens to disclose, or refuses to participate in an

activity of the employer 'that the employee reasonably believes is in violation of a law, or a rule or regulation promulgated pursuant to law.'" Id. at 587 (first quoting N.J.S.A. 34:19-2, 19-3; and then quoting Barratt v. Cushman & Wakefield of N.J., Inc., 144 N.J. 120, 127 (1996)). A plaintiff alleging unlawful retaliation under CEPA must prove that

> (1) she reasonably believed that her employer's conduct was violating either a law, rule, or regulation promulgated pursuant to law, or a clear mandate of public policy; (2) she performed a "whistle-blowing" activity described in N.J.S.A. 34:19-3(c); (3) an adverse employment action was taken against her; and (4) a causal connection exists between the whistle-blowing activity and the adverse employment action.
>
> [Battaglia v. United Parcel Serv., Inc., 214 N.J. 518, 556 (2013) (quoting Dzwonar v. McDevitt, 177 N.J. 451, 462 (2003)).]

Plaintiff claims two categories of whistleblowing activity: (1) her objection to the discipline of Ross concerning the radio tower incident as a violation of his union contract; and (2) MC College's failure to follow up on her reports of student complaints of sexual and gender harassment. She asserts that these whistleblowing activities caused her to lose her position as chair of her department. Her claim based on the discipline of Ross fails the first prong of CEPA. In contrast, her claims based on the student complaints satisfy a prima facie CEPA claim and involve material issues of disputed facts.

19

a. The Discipline of Ross

CEPA requires an employee to establish that she reasonably believed that her employer's conduct was violating either a law, rule, or regulation promulgated pursuant to law, or a clear mandate of public policy. Dzwonar, 177 N.J. at 462. A plaintiff is not required "to show that a law, rule, regulation or clear mandate of public policy actually would be violated if all the facts he or she alleges are true. Instead, a plaintiff must set forth facts that would support an objectively reasonable belief that a violation has occurred." Id. at 464. Whether the employee has identified a law or clear mandate of public policy is an issue of law for the court. Ibid.; see also Mehlman, 153 N.J. at 187.

Plaintiff contends that she satisfied the first prong of CEPA regarding the radio tower incident because she believed issuing a written disciplinary letter to Ross was a violation of his union contract. Even if the letter issued to Ross was a violation of his union contract, issuing such a letter was not an objectively reasonable basis for believing that any defendant violated a law, rule, regulation, or clear mandate of public policy. Instead, at best, plaintiff asserted that Ross's union contract was violated. Under the circumstances as alleged by plaintiff, pointing out such a violation of a union contract does not constitute whistleblower activity protected by CEPA. See Dzwonar, 177 N.J. at 469

(holding that the violation of a contract between a union and its members does not constitute a violation of law, rule, or regulation protected by CEPA). Moreover, plaintiff's allegations concerning the discipline of Ross do not constitute a violation of a clear mandate of public policy. See ibid. Accordingly, we affirm the summary judgment orders to the extent that they dismissed plaintiff's CEPA claim based on the radio tower incident and the discipline of Ross.

b.    The Student-Harassment Complaints

We reach a different conclusion concerning plaintiff's allegations that she reported female student complaints of sexual and gender harassment that were not appropriately addressed by MC College.

First, it is objectively reasonable for plaintiff to believe that the failure to address such complaints was a violation of law, regulation, or clear mandate of public policy. See Title IX of the Education Amendments Act of 1972, 20 U.S.C. §1681 (requiring colleges to adopt and publish grievance procedures for students to file complaints of sexual and gender harassment and to respond promptly and effectively to said complaints); see, e.g., Simpson v. Univ. of Colo. Boulder, 500 F.3d 1170 (10th Cir. 2007); Williams v. Bd. of Regents of Univ. Sys. of Ga., 477 F.3d 1282 (11th Cir. 2007).

Second, plaintiff testified that she personally made some of the reports of the student complaints and that she assisted Amanda Lyons in compiling and reporting other student complaints. Defendants dispute that plaintiff engaged in such whistleblowing activity. That disagreement shows that there are material factual disputes precluding summary judgment.

Third, plaintiff asserts that adverse employment action was taken against her when she was removed from her position of department chair. Fourth, she contends that there was a causal connection between her whistleblowing activities and her removal as chair. Again, defendants dispute the causal connection. They contend that some of the student complaints were made after plaintiff was removed as chair. There are, however, sufficient facts creating material factual disputes on the timing issue. In that regard, plaintiff testified that she reported a student complaint to Edwards in April 2014, and he told her to bury it. While Edwards disputes that allegation, that is another issue that needs to be resolved by a factfinder.

In summary, we reverse the portion of the April 12, 2019 orders that granted summary judgment to MC College and Edwards on plaintiff's CEPA claims based on the failure to appropriately respond to plaintiff's reports of student-harassment complaints. We affirm the orders to the extent that they

22

dismissed such claims against LaPerla-Morales and DeAngelo because there are no facts in the record that support that they were informed of plaintiff's reports or that they did not appropriately respond to the complaints.

2.    Plaintiff's LAD Claims

LAD is remedial legislation designed to root out "the cancer of discrimination." Battaglia, 214 N.J. at 546 (quoting Fuchilla v. Layman, 109 N.J. 319, 334 (1988)).  The Act prohibits unlawful employment practices and discrimination in the form of harassment "based on race, religion, sex, or other protected status, that creates a hostile work environment."  Cutler v. Dorn, 196 N.J. 419, 430 (2008) (citing Lehmann v. Toys R Us, Inc., 132 N.J. 587, 601 (1993)); see also N.J.S.A. 10:5-12(a).  LAD also prohibits retaliation against an employee for opposing any act or practice that violates LAD.  Dunkley v. S. Coraluzzo Petroleum Transporters, 437 N.J. Super. 366, 375 (App. Div. 2014); N.J.S.A. 10:5-12(d).

Plaintiff makes three claims under LAD.  She contends she was subject to (1) gender discrimination, (2) harassment based on her gender, and (3) unlawful retaliation.  Because her allegations of gender discrimination and harassment overlap, we will analyze them together.

23

a.    Gender Discrimination and Harassment

To establish a prima facie showing of gender discrimination, plaintiff must present evidence that she "(1) is a member of a designated protected class; (2) who was qualified for and performing the essential functions of the job; but (3) suffered termination or other adverse employment action; and (4) others not in the protected class did not suffer similar adverse employment actions." Schiavo v. Marina Distrib. Dev. Co., LLC, 442 N.J. Super. 346, 367 (App. Div. 2015) (citing Victor v. State, 203 N.J. 383, 409 (2010)).

To state a hostile work environment claim under LAD, plaintiff must show "the complained-of conduct (1) would not have occurred but for the employee's protected status, and was (2) severe or persuasive enough to make a (3) reasonable person believe that (4) the conditions of employment have been altered and that the working environment is hostile or abusive." Shepherd v. Hunterdon Developmental Ctr., 174 N.J. 1, 24 (2002) (citing Lehmann, 132 N.J. at 603-04). The court must consider the totality of the circumstances, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Green v. Jersey City Bd. of Educ., 177 N.J. 434, 450 (2003).

Plaintiff asserts that she was subject to gender-based discrimination and harassment by Edwards. She claims that Edwards set up meetings with her, but did not hold the meetings; failed to tell her about other meetings until just before their initiation so she was unprepared; set and then changed his expectations; stopped regularly communicating with plaintiff and ignored reports from her; and engaged in "repeated inflammatory and defamatory rhetoric to and about plaintiff and her performance." Plaintiff also contends that Edwards threatened, bullied, and intimidated her because of her gender. Plaintiff goes on to assert that she reported Edwards's inappropriate conduct to numerous administrators at MC College, but the college failed to investigate the complaints.

None of plaintiff's complaints constitute direct evidence of discrimination. See Bergen Commercial Bank v. Sisler, 157 N.J. 188, 208 (1999). Instead, plaintiff's allegations constitute indirect evidence of gender discrimination. When reviewing LAD claims based on indirect evidence, we use the burden-shifting framework established in McDonald Douglas Corp. v. Green, 411 U.S. 792, 802-04 (1973), and adopted by our Supreme Court in Battaglia. Henry v. N.J. Dep't of Human Servs., 204 N.J. 320, 331 (2010). Under that framework,

> (1) the plaintiff must come forward with sufficient evidence to constitute a prima facie case of discrimination; (2) the defendant then must show a legitimate nondiscriminatory reason for its decision;

25

and (3) the plaintiff must then be given the opportunity to show that defendant's stated reason was merely a pretext or discriminatory in its application.

[Ibid. (quoting Dixon v. Rutgers, The State Univ. of N.J., 110 N.J. 432, 442 (1988)).]

Viewed in the light most favorable to plaintiff, her contentions concerning gender discrimination and harassment go beyond losing her position as chair of the VPMA Department. In that regard, she alleges that she felt bullied, humiliated, and demoralized by Edwards's conduct towards her.

In response, MC College and Edwards dispute plaintiff's allegations. They also argue that her principal allegation of adverse action – the loss of the chair position – was based on legitimate non-discriminatory reasons. While many of plaintiff's contentions are vague, they are sufficient to survive a motion for summary judgment because they create disputed issues of material fact as to whether Edwards engaged in gender-based discrimination and harassment and whether the college failed to appropriately respond.

Accordingly, we reverse the portions of the April 12, 2019 orders that dismissed plaintiff's LAD claims based on gender discrimination and harassment against MC College and Edwards. Because there is no evidence presented by plaintiff that LaPerla-Morales and DeAngelo were aware of and

26

failed to respond to the alleged discrimination and harassment by Edwards, we affirm the orders that granted summary judgment to them.

b.    The LAD Retaliation Claim

Plaintiff's claims of retaliation under LAD are barred by the waiver provision of CEPA. When a plaintiff brings an action under CEPA, that party waives the right to remedies available under other laws. N.J.S.A. 34:19-8. Accordingly, the CEPA waiver provision applies to preclude substantially related claims of retaliation. Tartaglia v. UBS PaineWebber Inc., 197 N.J. 81, 103 (2008) (explaining that in enacting CEPA, the Legislature intended for it to contain a "statutory provision that deems the filing of a CEPA complaint to be an election of remedies").

Plaintiff's claims of retaliation under LAD are based on the same facts as her claim of retaliation under CEPA. While plaintiff disputes that relationship, she cites no evidence that distinguishes her CEPA retaliation claim from her LAD retaliation claim. Accordingly, summary judgment dismissing plaintiff's LAD-based retaliation claim was appropriately granted to defendants.

3.    Plaintiff's Tort Claims and Claim of Unjust Enrichment

Plaintiff asserted four tort claims and a claim of unjust enrichment. Those claims fail as a matter of law for several reasons.

A-4179-18T3

First, plaintiff failed to serve a timely notice of her tort claims against the individual defendants as required by the Tort Claims Act. N.J.S.A. 59:8-8.[1] The Act requires that a notice of claim be filed within ninety days of the accrual of the claim. Ibid. A claimant who fails to file notice within ninety days may, in the discretion of the trial court, be permitted to file such notice within one year, provided that the public entity or public employees have not been substantially prejudiced. N.J.S.A. 59:8-9.

Plaintiff claims that she substantially complied with the tort claim notice requirement when her counsel sent McCormick a letter on January 15, 2015. The trial court accepted that argument. We do not. The January 15, 2015 letter was sent to McCormick as vice president of MC College. While it might have been noticed to the college, the letter did not identify the individual defendants, nor did it set forth notice that they were subject to tort claims. Without individual actors, plaintiff's tort claims against MC College fail because the college can only be vicariously liable. See N.J.S.A. 59:2–2a (establishing public

---

[1] This first point is directed only to plaintiff's tort claims and does not apply to her unjust enrichment claim. See Pub. Advocate v. Belmar Bor., 233 N.J. Super. 437 (Law Div. 1989). We address the unjust enrichment claim in the second point.

entity liability based on acts of its employees pursuant to principles of respondeat superior).

Second, each of plaintiff's tort claims and claim of unjust enrichment lack proof of necessary elements of such causes of action. In that regard, we agree with the trial court's analysis in dismissing those claims as set forth in the written opinion issued on April 18, 2019.

a.    Defamation Claim

"[A] statement is defamatory if it is false, communicated to a third person, and tends to lower the subject's reputation in the estimation of the community or to deter third persons from associating with him [or her]." W.J.A. v. D.A., 210 N.J. 229, 238 (2012) (first alteration in original) (quoting Lynch v. N.J. Educ. Ass'n, 161 N.J. 152, 164-65 (1999)). "To determine whether a statement is defamatory, a court looks 'to the fair and natural meaning [to be given to the statement] by reasonable persons of ordinary intelligence.'" G.D. v. Kenny, 205 N.J. 275, 293 (2011) (alteration in original) (quoting Romaine v. Kallinger, 109 N.J. 282, 290 (1988)).

The trial court found that plaintiff could not demonstrate a prima facie case of defamation because plaintiff failed to cite to any specific comment made by Edwards or any evidence in the record showing that Edwards made a false

statement to a third party that injured plaintiff by affecting her reputation. We agree with the trial court and, therefore, affirm the trial court's dismissal of plaintiff's defamation claim.

b. Tortious Interference

A claim of tortious interference with contractual relations requires plaintiff to demonstrate: "(1) actual interference with a contract; (2) that the interference was inflicted intentionally by a defendant who is not a party to the contract; (3) that the interference was without justification; and (4) that the interference caused damage." Dello Russo v. Nagel, 358 N.J. Super. 254, 268 (App. Div. 2003) (citing 214 Corp. v. Casino Reinvestment Dev. Auth., 280 N.J. Super. 624, 628 (Law Div. 1994)). A claim must be based on facts showing that the interference was done intentionally and with malice. Printing Mart-Morristown v. Sharp Elecs. Corp., 116 N.J. 739, 751 (1989). "For purposes of this tort, '[t]he term malice is not used in the literal sense requiring ill will toward the plaintiff,'" but rather meaning "that the harm was inflicted intentionally and without justification or excuse." Ibid. (alteration in original) (citations omitted).

The trial court found that plaintiff failed to demonstrate that defendants intentionally interfered with plaintiff's contract without justification. We agree.

c. Unjust Enrichment

To establish unjust enrichment, the plaintiff must show (1) that she expected remuneration from defendant at the time she performed or conferred a benefit on defendant; and (2) that retention of that benefit without payment would be unjust. Woodlands Cmty. Ass'n, Inc. v. Mitchell, 450 N.J. Super. 310, 317 (App. Div. 2017) (citing VRG Corp. v. GKN Realty Corp., 135 N.J. 539, 554 (1994)).

Here, plaintiff's claim fails on the second prong; plaintiff fails to show that defendants were unjustly enriched. The trial court correctly found that plaintiff failed to identify any work done for defendants that entitled her to compensation beyond her ongoing payment as an MC College employee. Any work plaintiff performed was in conjunction with her employment.

d. Intentional Infliction of Emotional Distress

To prove intentional infliction of emotional distress, a plaintiff must show:

> (1) defendant acted intentionally; (2) defendant's conduct was "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community;" (3) defendant's actions proximately caused him [or her] emotional distress; and (4) the emotional distress was "so severe

31

that no reasonable [person] could be expected to endure it."

> [Segal v. Lynch, 413 N.J. Super. 171, 191 (App. Div. 2010) (second alteration in original) (quoting Buckley v. Trenton Saving Fund Soc'y, 111 N.J. 355, 366 (1988)).]

We have described the second required element "as an 'elevated threshold' that is satisfied only in extreme cases." Ingraham v. Ortho-McNeil Pharm., 422 N.J. Super. 12, 21 (App. Div. 2011) (quoting Griffin v. Tops Appliance City, Inc., 337 N.J. Super. 15, 23 (App. Div. 2001)). Defendants' alleged conduct, even if accepted as true, does not establish the outrageousness required for an intentional infliction of emotional distress claim.

e. Negligent Infliction of Emotional Distress

Plaintiff includes a claim for negligent infliction of emotional distress in the headings of her brief but has provided no argument addressing its merits. An argument not presented in a party's brief is deemed waived. Sklodowsky v. Lushis, 417 N.J. Super. 648, 657 (App. Div. 2011); see also N.J. Dep't of Env't Prot. v. Alloway Twp., 438 N.J. Super. 501, 505 n.2 (App. Div. 2015) (a party waived issue on appeal that it raised "[i]n a single sentence in its brief," without any legal argument).

## III.

In summary, we affirm the orders concerning discovery and denials of reconsideration. Accordingly, we affirm the orders issued on January 28, 2019, February 15, 2019, and May 24, 2019. We also affirm the April 12, 2019 orders granting summary judgment to defendants LaPerla-Morales and DeAngelo. In addition, we affirm the portions of the April 12, 2019 orders that dismiss with prejudice plaintiff's claims against MC College and Edwards for LAD-based retaliation, torts, and unjust enrichment. We reverse and remand the portions of the April 12, 2019 orders that dismissed the claims against MC College and Edwards based on CEPA and gender discrimination and harassment under LAD. We remand those three claims as modified in this opinion.

Affirmed in part and reversed in part. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-4179-18T3